IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICRO-GAMING VENTURES, LLC<br><br>                    Plaintiff,<br><br>    v.<br><br>DRAFTKINGS, INC.<br><br>                    Defendant. | Civil Action No. _____<br><br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Micro-Gaming Ventures, LLC ("Micro-Gaming Ventures" or "Plaintiff"), for its Complaint against Defendant DraftKings, Inc., (referred to herein as "DraftKings" or "Defendant"), alleges the following:

## NATURE OF THE ACTION

1.      This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 271 *et seq*.

## THE PARTIES

2.      Plaintiff Micro-Gaming Ventures is a limited liability company organized under the laws of the Texas with a place of business at 5646 Milton Street, Suite 423, Dallas, TX 75206.  Micro-Gaming Ventures, LLC is a forward-thinking, pioneering company that specializes in the development of innovative online gaming and wagering solutions. It focuses on micro-betting and location-based technologies in the online gaming and wagering industry, and it is dedicated to creating engaging, secure, and user-friendly platforms that redefine the online gaming experience.

3.      Upon information and belief, DraftKings is a corporation organized under the laws of the Nevada with a place of business at 222 Berkeley Street, Boston, MA 02116.  Upon information and belief, DraftKings sells, offers to sell, and/or uses products and services throughout the United States, including in this judicial district, and introduces infringing products and services into the stream of commerce knowing that they would be sold and/or used in this judicial district and elsewhere in the United States.  DraftKings is an entertainment and gaming business that provides users with and sells sports-betting services through its DraftKings Sportsbook offering, which is available online and on a mobile-phone app via Apple's App Store and the Google Play Store.

## JURISDICTION AND VENUE

4.      This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code.

5.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

6.      Venue is proper in this judicial district under 28 U.S.C. § 1400(b).

7.      This Court has personal jurisdiction over DraftKings under the laws of the State of New Jersey, due at least to DraftKings's substantial business in New Jersey and in this judicial district, directly or through intermediaries, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct and/or deriving substantial revenue from goods and services provided to individuals in the State of New Jersey.  Venue is also proper in this district because DraftKings has a regular and established place of business in this district.  For instance, DraftKings has an 7,500-square-foot office in this judicial district, at 221 River Street Hoboken, NJ, which is "home to [DraftKings's] Customer Experience, Compliance, and Fraud teams."  *See* https://careers.draftkings.com/locations/united-states/ (listing office in Hoboken, NJ):



Located in Hoboken, New Jersey, this office is home to our Customer Experience, Compliance, and Fraud teams. With over 7,500 square feet of office space, **it's the ideal space to collaborate** or grab a coffee with your teammates while overlooking the Hudson River.

## **BACKGROUND[1]**

<u>The Inventions</u>

8.      Michael Shore, Alfonso Chan, Luis Ortiz, and Kermit Lopez are the inventors of U.S. Patent Nos. 8,545,311 ("the '311 patent"), 8,632,392 ("the '392 patent"), 8,734,231 ("the '231 patent"), 11,783,679 ("the '679 patent"), and 12,266,244 ("the '244 patent").  True and correct copies of these patents are attached as Exhibits 1–5.

9.      The '311, '392, and '231 patents are in a patent family directed to micro-gaming-related wagering innovations.  Both the '392 and '231 patents are continuations-in-part of the '311 patent.  The '679 patent is in a separate patent family directed to location-based wagering innovations.

---

[1] The pleaded facts in this Complaint are supported by the Declaration of Nick Farley, attached here as Exhibit 6.

10.    The '311, '392, and '231 patents resulted from the pioneering efforts of Messrs. Shore, Chan, Ortiz, and Lopez (hereinafter "the Inventors") in the area of micro-betting technology, which was a nascent field when they filed their first provisional patent application in August 2010.  These efforts resulted in the development of systems and methods for enabling remote-device users to wager on "micro-events" of games in a data network accessible gaming environment in the early 2010s.

11.    The '311, '392, and '231 patents relate to innovations in the field of micro-betting, which is also known as micro-gaming or in-play betting.  Micro-betting is a dynamic form of online wagering that focuses on small-scale, individual bets on targeted outcomes within a larger event.  This innovative approach allows users to engage with live events in real-time, placing wagers on specific micro-events or outcomes, such as the next play in a sports game or a particular moment in an entertainment event.  (*See, e.g.*, Ex. 7, "Microbetting Explained: Which Online Sportsbooks Have It?" BettingUSA.com (Jan. 13, 2023).)  Similarly, the '679 and '244 patents relate to location-based authorization for wagering, which ensures secure access to the wagering service based on the user's geographic location.

12.    At the time of these pioneering efforts, there was no widely implemented technology used to address wagering on specific micro-events or outcomes, nor location-based authorization for wagering.  In fact, micro-gaming did not become widely popular in the U.S. until 2020, when a company called Simplebet—which DraftKings acquired for $198M in 2024—launched its micro-betting platform product during the Covid pandemic.  (*See* Ex. 8, Action Network, "DraftKings Acquires Microbetting Provider Simplebet," Aug. 29, 2024, *available at* https://www.actionnetwork.com/general/draftkings-acquires-microbetting-provider-simplebet; *see also* Ex. 9, Sports & Business Journal, "DraftKings Completes Acquisition of

Simplebet," Dec. 4, 2024, *available at* https://www.sportsbusinessjournal.com/Articles/
2024/12/04/draftkings-completes-acquisition-of-simplebet/.)  Ever since, in-game betting has
grown more popular in the U.S., which further highlights the need for an innovative technology
to oversee micro-bet placement during live events like sports games, and to facilitate
competitions within gaming environments (such as eSports, eGaming, and Fantasy Sports)—
innovations that the Inventors developed in 2010.

13.     Similarly, New Jersey did not legalize online gambling at all until Feburary 2013
(becoming only the third state in the U.S. to do so, behind Nevada and Delaware).  (*See* Ex. 10,
N.J. Office of the Attorney General, Division of Gaming Enforcement, Jan. 2, 2015 ("On
Feburary 26, 2013, Governor Chris Christie signed legislation permitting Internet gambling in
New Jersey.").)  With the legalization of online gambling, location-based wagering became
increasingly important to ensure that gambling service providers were accepting wagers from
users only in jurisdictions where online gambling was legal.  According to David Rebuck, N.J.'s
Director of the N.J. Attorney General's Division of Gaming Enforcement, in 2015:

> Ensuring that all play on authorized websites occurs only within the
> borders of New Jersey is a critical component of New Jersey's
> online gaming operations.  Geolocation technology enables
> operators to determine where someone is playing within the state
> and to block those trying to gain access from outside New Jersey's
> borders.

(*Id.* at 4.)

14.     Three years later, the Supreme Court decided *Murphy v. NCAA*, 584 U.S. 453
(2018), which legalized sports betting across the United States.  New Jersey legalized mobile
sports betting a few months later, which increased the need for an innovative location-based
wagering system and method to authenticate sports bettors in authorized locations, manage the
real-time processing of micro-bets, and deliver a seamless user experience.

Advantage Over the Prior Art

15.     The patented inventions disclosed in the '311, '392, '231, '679, and '244 patents provide many advantages over the prior art, and in particular improved the operations of managing micro-bets within larger macro-events and authorizing users based on their locations. (*See, e.g.*, Ex. 1 at claim 1.)  One advantage of the patented inventions is that they provide a way to determine, via a configured computer, when a micro-bet is available to bettors and thereafter when the micro-bet has closed to additional betters.  This becomes increasingly important as micro-bets move quickly and necessarily close from play to play and pitch to pitch.  Another advantage of the patented inventions is the ability to randomize the available micro-bets via a computer, which can (among other things) prevent cheating and provide a dynamic user experience.  (*See, e.g.*, Ex. 2 at claim 1.)

16.     Because of these significant advantages that can be achieved through the use of the patented invention, Micro-Gaming Ventures believes that the '311, '392, '231, '679, and '244 patents present significant commercial value for companies like DraftKings.  Indeed, the value of these innovations is reflected in DraftKings's recent purchase of Simplebet, a provider of micro-betting technology, for $195M, not to mention DraftKings's overall revenue of $4.8B in 2024—$2.9B from DraftKings's Sportsbook alone.  (*See* DraftKings 10-K (filed February 14, 2025) § 9 ("Revenue Recognition" for 2024), *available at* https://draftkings.gcs-web.com/node/15606/html.)

Technological Innovation

17.     The patented inventions disclosed in the '311, '392, '231, '679, and '244 patents resolve technical problems related to micro-betting and location-based wagering, particularly problems related to the use of managing micro-bets within larger macro-events, providing video

playback within online betting services, and authorizing bettors based on their location.  As the '311 patent explains, one of the limitations of the prior art in sports betting was that bets would be available before a macro-event started, but there would be "no bets available, however, where even after a macro-event starts a particular baseball player will hit a home run, much less a system where a bet can be placed in real time on whether a certain micro-outcome will occur during a specific at bat, or even a particular pitch."  (Ex. 1 at 16:19-24.)  The '311 patent, as one example, describes this as "a key difference between the disclosed embodiments and prior art implementations"; i.e., "[t]he disclosed embodiments thus provide for a 'bet/play as you watch, dynamic, parimutuel game' where each possible situation, or micro-event in a larger game, enables multiple betting options on micro-event outcomes even after the macro-event starts." (*Id.* at 16:24-30.)

18.    The claims of the '311, '392, '231, '679, and '244 patents do not merely recite the performance of some well-known business practice from the pre-Internet world along with the requirement to perform it on the Internet.  Instead, the claims of the '311, '392, '231, '679, and '244 patents recite inventive concepts that are deeply rooted in sports-betting technology, and overcome problems specifically arising out of how to configure computers to manage micro-bets within larger macro-events, provide video playback within online betting services, randomize micro-bets, and authorize bettors based on their location.

19.    In addition, the claims of the '311, '392, '231, '679, and '244 patents recite inventive concepts that improve the functioning of sports-betting services, particularly the websites and apps that sports-betting providers like DraftKings operate to offer micro-betting opportunities to bettors in this District.

20.     Moreover, the claims of the '311, '392, '231, '679, and '244 patents recite inventive concepts that are not merely routine or conventional use of sports-betting website and app technology.  Instead, the patented inventions disclosed in the '311, '392, '231, '679, and '244 patents provide new and novel solutions to specific problems related to providing micro-betting opportunities for bettors, optimizing the wagering process using specially configured technology, and providing a seamless user experience.

21.     And finally, the patented inventions disclosed in the '311, '392, '231, '679, and '244 patents do not preempt all the ways that sports-betting methods and technology may be used to improve the online micro-betting experience, nor do the '311, '392, '231, '679, and '244 patents preempt any other well-known or prior art technology.

22.     During the prosecution of the '679 patent, in the Notice of Allowability on June 12, 2023, the examiner stated that the patent application's claims were patentable over several prior art references that disclosed "[l]ocation based wagering via remote devices" but lacked the patent application's micro-betting-specific claim limitations.  (*See* Ex. 11 at 2-3.)

23.     Likewise, the '244 patent—which issued only last month—is a representative example of the inventive concepts and specially configured technology that the U.S. Patent & Trademark Office has found eligible for patent protection.

24.     In the prosecution of the '244 patent, in an Office Action dated April 29, 2024, the patent examiner rejected claim 44 under 35 U.S.C. § 101.  (*See* Ex. 12 at 3.)

25.     In a response dated September 4, 2024, the patent applicants stated that their proposed amendments to claim 44 included:

> The limitations of a server, including a physical act of processing a test to determine whether a selection of a micro-bet or a group of micro-bets made by a user, wherein, upon determining that the selection of the micro-bet or the group of micro-bets made, entering

> and processing the microbet or the group of micro-bets via a server, wherein, upon determining that the selection has not been made, offering one or more additional new micro-bets associated with a particular micro[-]outcome for selection by the user; and generating a result of the processed micro-bet or the group of micro-bets to the user.

(Ex. 13 at 5.)

26.    In the same response, the patent applicants stated that "[t]he claimed invention integrates multiple improvements into practical application, providing a solution for location-based wagering." (*Id.* at 7.)

27.    In the same response, the patent applicants stated that "[n]o conventional system has previously provided such a technological solution as is disclosed and claimed by Applicants." (*Id.* at 7-8.)

28.    In the Notice of Allowance dated January 8, 2025 (Ex. 14), the Examiner indicated that claim 44 (among other claims) was allowed.

29.    The '244 patent issued on April 1, 2025. (Ex. 5 at 1.)

30.    Accordingly, the claims in the '311, '392, '231, '679, and '244 patents recite combinations of elements sufficient to ensure that the claims in substance and in practice amount to significantly more than patent-ineligible abstract ideas.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 8,545,311

31.    The allegations set forth in the foregoing paragraphs are incorporated into this First Claim for Relief.

32.    On October 1, 2013, U.S. Patent No. 8,545,311 ("the '311 patent"), entitled "Systems and Methods for Enabling Remote Device Users to Wager on Micro Events of Games in a Data Network Accessible Gaming Environment," was duly and legally issued by the United

States Patent and Trademark Office.  A true and correct copy of the '311 patent is attached as Exhibit 1.

33.    Plaintiff is the assignee and owner of the right, title and interest in and to the '311 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them, including all past infringement.

34.    The inventions of the '311 patent resolve technical problems related to micro-betting.  For example, the inventions allow parties to authorize bettors to place bets on micro-outcomes within larger macro-events while providing users with real-time video of the macro-event on the same display screen.

35.    The claims of the '311 patent do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet.  Instead, the claims of the '311 patent recite one or more inventive concepts that are rooted in computerized sports-betting technology, and overcome problems specifically arising in the realm of computerized sports-betting technologies.  The claims of the '311 patent recite an invention that is not merely the routine or conventional use of online wagering services.  Instead, the invention, among other things, allows sports-betting operators to authorize bettors to place bets on micro-outcomes within larger macro-events while providing those bettors with real-time video of the macro-event on the same display screen.

36.    The technology claimed in the '311 patent does not preempt all ways of using sports-betting management, video playback, and bettor-authorization technology, nor preempt the use of all related technologies, nor preempt any other well-known or prior art technology.

37.     Accordingly, each claim of the '311 patent recites a combination of elements sufficient to ensure that the claim in practice amounts to significantly more than a patent on an ineligible concept.

38.     Upon information and belief, Defendant has and continues to directly infringe at least claim 1 of the '311 patent by making, using, selling, importing and/or providing and causing to be used a website and mobile-phone app called "DraftKings Sportsbook," which is an online sportsbook platform available at https://sportsbook.draftkings.com/live.  Exemplary infringement analysis showing infringement of claim 1 of the  '311 patent is set forth in Exhibit 15.  This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by DraftKings with respect to the '311 patent.  Micro-Gaming Ventures reserves all rights to amend, supplement and modify this preliminary infringement analysis. Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '311 patent.

39.     The Accused Instrumentalities infringed and continue to infringe claim 1 of the '311 patent during the pendency of the '311 patent.

40.     Micro-Gaming Ventures has been harmed by DraftKings's infringing activities.

### COUNT II – INFRINGEMENT OF U.S. PATENT NO. 8,632,392

41.     The allegations set forth in the foregoing paragraphs are incorporated into this Second Claim for Relief.

42.     On January 21, 2014, U.S. Patent No. 8,632,392 ("the '392 patent"), entitled "Systems and Methods for Enabling Remote Device Users to Wager on Micro Events of Games in a Data Network Accessible Gaming Environment" was duly and legally issued by the United States Patent and Trademark Office.  A true and correct copy of the '392 patent is attached as Exhibit 2.

43.     Plaintiff is the assignee and owner of the right, title and interest in and to the '392 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them, including all past infringement.

44.     The inventions of the '392 patent resolve technical problems related to micro-betting.  For example, the inventions allow parties to configure, via a computer, a sports-betting control function to determine when a micro-bet is open and available, or closed to additional bettors, and randomize those micro-bets to provide a dynamic user experience and prevent cheating.

45.     The claims of the '392 patent do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet.  Instead, the claims of the '392 patent recite one or more inventive concepts that are rooted in computerized sports-betting technology, and overcome problems specifically arising in the realm of computerized sports-betting technologies.  The claims of the '392 patent recite an invention that is not merely the routine or conventional use of online wagering services.  Instead, the invention, among other things, allows sports-betting operators to determine when a micro-bet is open and available, or closed to additional bettors, and randomize those micro-bets to provide a dynamic user experience and prevent cheating.

46.     The technology claimed in the '392 patent does not preempt all ways of using sports-betting management technology, nor preempt the use of all related technologies, nor preempt any other well-known or prior art technology.

47.     Accordingly, each claim of the '392 patent recites a combination of elements sufficient to ensure that the claim in practice amounts to significantly more than a patent on an ineligible concept.

12

48.    Upon information and belief, Defendant has and continues to directly infringe at least claim 1 of the '392 patent by making, using, selling, importing and/or providing and causing to be used a website and mobile-phone app called "DraftKings Sportsbook," which is an online sportsbook platform available at https://sportsbook.draftkings.com/live.  Exemplary infringement analysis showing infringement of claim 1 of the '392 patent is set forth in Exhibit 16.  This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by DraftKings with respect to the '392 patent.  Micro-Gaming Ventures reserves all rights to amend, supplement and modify this preliminary infringement analysis. Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '392 patent.

49.    The Accused Instrumentalities infringed and continue to infringe claim 1 of the '392 patent during the pendency of the '392 patent.

50.    Micro-Gaming Ventures has been harmed by DraftKings's infringing activities.

## COUNT III – INFRINGEMENT OF U.S. PATENT NO. 8,734,231

51.    The allegations set forth in the foregoing paragraphs are incorporated into this Third Claim for Relief.

52.    On May 27, 2014, U.S. Patent No. 8,734,231 ("the '231 patent"), entitled "Systems and Methods for Enabling Remote Device Users to Wager on Micro Events of Games in a Data Network Accessible Gaming Environment" was duly and legally issued by the United States Patent and Trademark Office.  A true and correct copy of the '231 patent is attached as Exhibit 3.

53.    Plaintiff is the assignee and owner of the right, title and interest in and to the '231 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them, including all past infringement.

54.    The inventions of the '231 patent resolve technical problems related to micro-betting.  For example, the inventions allow parties to configure, via a computer, a sports-betting control function to determine when a micro-bet is open and available, or closed to additional bettors, and randomize those micro-bets to provide a dynamic user experience and prevent cheating.

55.    The claims of the '231 patent do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet.  Instead, the claims of the '231 patent recite one or more inventive concepts that are rooted in computerized sports-betting technology, and overcome problems specifically arising in the realm of computerized sports-betting technologies.  The claims of the '231 patent recite an invention that is not merely the routine or conventional use of online wagering services.  Instead, the invention, among other things, allows sports-betting operators to determine when a micro-bet is open and available, or closed to additional bettors, and randomize those micro-bets to provide a dynamic user experience and prevent cheating.

56.    The technology claimed in the '231 patent does not preempt all ways of using sports-betting management technology, nor preempt the use of all related technologies, nor preempt any other well-known or prior art technology.

57.    Accordingly, each claim of the '231 patent recites a combination of elements sufficient to ensure that the claim in practice amounts to significantly more than a patent on an ineligible concept.

58.    Upon information and belief, Defendant has and continues to directly infringe at least claim 1 of the '231 patent by making, using, selling, importing and/or providing and causing to be used a website and mobile-phone app called "DraftKings Sportsbook," which is an

online sportsbook platform available at https://sportsbook.draftkings.com/live.  Exemplary

infringement analysis showing infringement of claim 1 of the '231 patent is set forth in Exhibit

17.  This infringement analysis is necessarily preliminary, as it is provided in advance of any

discovery provided by DraftKings with respect to the '231 patent.  Micro-Gaming Ventures

reserves all rights to amend, supplement and modify this preliminary infringement analysis.

Nothing in the attached chart should be construed as any express or implied contention or

admission regarding the construction of any term or phrase of the claims of the '231 patent.

59.    The Accused Instrumentalities infringed and continue to infringe claim 1 of the

'231 patent during the pendency of the '231 patent.

60.    Micro-Gaming Ventures has been harmed by DraftKings's infringing activities.

## COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 11,783,679

61.    The allegations set forth in the foregoing paragraphs are incorporated into this

Fourth Claim for Relief.

62.    On October 10, 2023, U.S. Patent No. 11,783,679 ("the '679 patent"), entitled

"Location-Based Wagering Via Remote Devices" was duly and legally issued by the United

States Patent and Trademark Office.  A true and correct copy of the '679 patent is attached as

Exhibit 4.

63.    Plaintiff is the assignee and owner of the right, title and interest in and to the '679

patent, including the right to assert all causes of action arising under said patents and the right to

any remedies for infringement of them, including all past infringement.

64.    The inventions of the '679 patent resolve technical problems related to location-

based wagering and micro-betting.  For example, the inventions allow parties to set when a

micro-betting opportunity begins and ends while also ensuring secure access to the wagering

service based on the user's geographic location.

65.     The claims of the '679 patent do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet.  Instead, the claims of the '679 patent recite one or more inventive concepts that are rooted in computerized sports-betting technology, and overcome problems specifically arising in the realm of computerized sports-betting technologies.  The claims of the '679 patent recite an invention that is not merely the routine or conventional use of online wagering services.  Instead, the invention, among other things, allows sports-betting operators to set when a micro-betting opportunity begins and ends while also ensuring secure access to the wagering service based on the user's geographic location.

66.     The technology claimed in the '679 patent does not preempt all ways of using sports-betting management and bettor-authorization technology, nor preempt the use of all related technologies, nor preempt any other well-known or prior art technology.

67.     Accordingly, each claim of the '679 patent recites a combination of elements sufficient to ensure that the claim in practice amounts to significantly more than a patent on an ineligible concept.

68.     Upon information and belief, Defendant has and continues to directly infringe at least claim 1 of the '679 patent by making, using, selling, importing and/or providing and causing to be used a website and mobile-phone app called "DraftKings Sportsbook," which is an online sportsbook platform available at https://sportsbook.draftkings.com/live.  Exemplary infringement analysis showing infringement of claim 1 of the '679 patent is set forth in Exhibit 18.  This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by DraftKings with respect to the '679 patent.  Micro-Gaming Ventures reserves all rights to amend, supplement and modify this preliminary infringement analysis.

Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '679 patent.

69.    The Accused Instrumentalities infringed and continue to infringe claim 1 of the '679 patent during the pendency of the '679 patent.

70.    Micro-Gaming Ventures has been harmed by DraftKings's infringing activities.

### COUNT V – INFRINGEMENT OF U.S. PATENT NO. 12,266,244

71.    The allegations set forth in the foregoing paragraphs are incorporated into this Fifth Claim for Relief.

72.    On April 1, 2025, U.S. Patent No. 12,266,244 ("the '244 patent"), entitled "Location-Based Wagering Via Remote Devices" was duly and legally issued by the United States Patent and Trademark Office.  A true and correct copy of the '244 patent is attached as Exhibit 5.

73.    Plaintiff is the assignee and owner of the right, title and interest in and to the '244 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them, including all past infringement.

74.    The inventions of the '244 patent resolve technical problems related to location-based wagering and micro-betting.  For example, the inventions allow parties to set when a micro-betting opportunity begins and ends while also ensuring secure access to the wagering service based on the user's geographic location, and processes a test to determine whether a selection of a micro-bet or a group of micro-bets has been made by a user.

75.    The claims of the '244 patent do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet.  Instead, the claims of the '244 patent recite one or more inventive concepts that are rooted in computerized sports-betting technology, and overcome problems specifically arising in

the realm of computerized sports-betting technologies.  The claims of the '244 patent recite an invention that is not merely the routine or conventional use of online wagering services.  Instead, the invention, among other things, allows sports-betting operators to set when a micro-betting opportunity begins and ends while also ensuring secure access to the wagering service based on the user's geographic location, and processes a test to determine whether a selection of a micro-bet or a group of micro-bets has been made by a user.  Upon determining that the selection of the micro-bet or the group of micro-bets has been made, the claimed inventions of the '244 patent enter and process the microbet or the group of micro-bets via a server, and upon determining that the selection has not been made, the claimed inventions of the '244 patent offers one or more additional new micro-bets associated with a particular micro-outcome for selection by the user and generates a result of the processed micro-bet or the group of micro-bets to the user.

76.    The technology claimed in the '244 patent does not preempt all ways of using sports-betting management and bettor-authorization technology, nor preempt the use of all related technologies, nor preempt any other well-known or prior art technology.

77.    Accordingly, each claim of the '244 patent recites a combination of elements sufficient to ensure that the claim in practice amounts to significantly more than a patent on an ineligible concept.

78.    Upon information and belief, Defendant has and continues to directly infringe at least claim 1 of the '244 patent by making, using, selling, importing and/or providing and causing to be used a website and mobile-phone app called "DraftKings Sportsbook," which is an online sportsbook platform available at https://sportsbook.draftkings.com/live.  Exemplary infringement analysis showing infringement of claim 1 of the '244 patent is set forth in Exhibit 19.  This infringement analysis is necessarily preliminary, as it is provided in advance of any

discovery provided by DraftKings with respect to the '244 patent. Micro-Gaming Ventures reserves all rights to amend, supplement and modify this preliminary infringement analysis. Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '244 patent.

79.    The Accused Instrumentalities infringed and continue to infringe claim 1 of the '244 patent during the pendency of the '244 patent.

80.    Micro-Gaming Ventures has been harmed by DraftKings's infringing activities.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Micro-Gaming Ventures demands a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Micro-Gaming Ventures demands judgment for itself and against DraftKings as follows:

A.    An adjudication that DraftKings has infringed the '311, '392, '231, '679, and '244 patents;

B.    An award of damages to be paid by DraftKings adequate to compensate Micro-Gaming Ventures for DraftKings's past infringement of the '311, '392, '231, '679, and '244 patents, and any continuing or future infringement through the date such judgment is entered, including interest, costs, expenses and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

C.    A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of Micro-Gaming Ventures's reasonable attorneys' fees; and

D.    An award to Micro-Gaming Ventures of such further relief at law or in equity as the Court deems just and proper.

Dated: May 9, 2025

Respectfully submitted,

/s/ Cali R. Spota

Cali R. Spota
FOX ROTHSCHILD LLP
212 Carnegie Center, Suite 400
Princeton, NJ 08540
Telephone: (609) 844-7437
Facsimile: (609) 896-469
Email: cspota@foxrothschild.com

Jordan B. Kaplan
Marc J. Gross
FOX ROTHSCHILD LLP
49 Market St.
Morristown, NJ 07960-5122
Telephone: (973) 994-7819
Facsimile: (973) 992-9125
jbkaplan@foxrothschild.com
mgross@foxrothschild.com

*Attorneys for Plaintiff,*
*Micro-Gaming Ventures, LLC*

*Of Counsel*:

Timothy Devlin (*Pro Hac Vice application
forthcoming*)
Joseph J. Gribbin (*Pro Hac Vice application
forthcoming*)
DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, Delaware 19806
Telephone: (302) 449-9010
Facsimile: (302) 353-4251

## <u>LOCAL CIVIL RULE 11.2 CERTIFICATION</u>

Pursuant to Local Civil Rule 11.2, the undersigned attorney for Plaintiff, Micro-Gaming Ventures, LLC, certifies that, to the best of her knowledge, the matters in controversy are not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

Dated: May 9, 2025                                        _/s/ Cali R. Spota_____
                                                                          Cali R. Spota